Argued and submitted April 7, affirmed September 10, 1986

In the Matter of the Compensation of
Roy M. Hoke, Claimant.
HOKE,
*Petitioner,*

*v.*

LIBBY, MCNEIL & LIBBY et al,
*Respondents.*
(WCB 83-07945; CA A35730)
724 P2d 940

J. Michael Alexander, Salem, argued the cause for petitioner. With him on the brief was Burt, Swanson, Lathen, Alexander & McCann, Salem.

Deborah L. Sather, Portland, argued the cause for respondents. With her on the brief was Moscato & Byerly, Portland.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

NEWMAN, J.

## NEWMAN, J.

Claimant petitions for review of an order of the Worker's Compensation Board that reversed the referee and affirmed employer's termination of permanent total disability payments. We refer to our review, and the underlying proceedings before the referee and Board, as "Hoke III." We affirm.

Claimant suffered a compensable injury in 1979 and received an award of 50 percent permanent partial disability in April, 1982. In July and December of 1982, he filed aggravation claims, which employer denied. Claimant requested a hearing ("Hoke I"). On March 28, 1983, the referee issued an order in Hoke I, overturning the denial of the aggravation claims. Employer sought review by the Board. On December 18, 1983, the Board issued an order that reversed the referee in Hoke I and reinstated employer's denials. We affirmed. *Hoke v. Libby, McNeil & Libby,* 73 Or App 44, 697 P2d 993 (1985).

On February 18, 1983, just before the hearing in Hoke I, Dr. Raaf examined claimant; on March 3, 1983, he wrote a report, which employer treated as another aggravation claim and denied on March 22, 1983.[1] Claimant requested a hearing ("Hoke II"). It was held on May 18, 1983, before a different referee from the one who heard Hoke I. On May 28, 1983, while Hoke I was pending before the Board, the referee decided Hoke II. The issues were the propriety of the denial of March 22, 1983 and penalties and attorney's fees.

The referee refused to treat Raaf's report of March 3, 1983, as a separate aggravation claim. The opinion stated:

"At the time of the denial [by employer on March 22, 1983], the referee [in Hoke I] had jurisdiction of the case. It was his responsibility to determine whether claimant's condition had worsened and whether an aggravation had occurred. Except for the reports of Dr. Raaf and Dr. Buza, no new medical evidence had been developed. Dr. Raaf suggested additional surgery and Dr. Buza agreed with him, but adhered to his opinion that, clinically, claimant's condition had not worsened. At the time of its denial, the claims administrator had no information which fortified its position presented at

---

[1] At oral argument, respondents moved to supplement the record with the transcript of the proceedings in Hoke II. We deny the motion.

the prior hearing. If anything, Dr. Raaf's report strengthened the claimant's request for claim reopening.

"After the hearing and before the issuance of the referee's Opinion and Order [in Hoke I], the employer through its insurer had at least two options. It could have waited receipt of the order and, if dissatisfied, then requested a review. It could have requested the referee to admit into evidence any newly developed or discovered evidence and to reconvene the hearing. It is obvious that it chose to not await [sic] the order before taking some type of action. No attempt was made to submit new evidence and to reconvene the hearing. The documents received in this interim would have added nothing to its case, even if admitted at a reconvened hearing.

"The Opinion and Order issued on March 28, 1983 [in Hoke I] is presently the law of the case and will remain so until altered by a review or appeal. There is no authority under our law for another referee [in Hoke II] to be interposed into the appeal process or to impose himself in reevaluating and rejudging the same evidence in the posture of this matter.

"The option of issuing a denial [on March 22, 1983] was ill-advised. There was nothing to deny at this point. Claimant had not requested reopening of his claim after the hearing. He had done so before; a hearing was convened and evidence was taken and the issue under consideration by the referee [in Hoke I] was identically the same as that which was attempted to be raised by the denial issued after the [Hoke I] hearing.

"No precedent can be found for the action of the insurer. The Oregon Workers' Compensation Law establishes a procedure for the orderly processing and management of claims. In the case of denied aggravation claims, no benefits are payable until a referee orders otherwise after hearing. Benefits ordered paid by a referee must be paid until ordered otherwise, either on review, by a court on appeal, or by an evaluation order. This established system cannot be circumvented or altered by the issuance of a denial during the time the matter is before a referee. If permitted, the proliferation of hearings and litigations would be even a greater problem.

"It is obvious that this carrier used the device of this denial in an effort to avoid additional claim costs. On the date of the denial, however, it did not know whether the referee would order payment of additional claim costs. It chose to take the matter into its own hands by issuing the denial and terminating benefits.

"The action was improper and constituted an unreasonable resistance to the payment of compensation. The benefits

ordered paid by the referee in his order [in Hoke I] should have been paid but were not, in a misguided reliance upon a denial improperly issued."

The referee in Hoke II ordered employer to pay all sums that the referee ordered it to pay in Hoke I, plus penalties and attorney's fees. Neither party sought Board review of the referee's order in Hoke II.[2]

On September 2, 1983, after the referee's order in Hoke II and before the Board's order in Hoke I, the Evaluation Division issued a determination order awarding claimant permanent total disability, and employer began to pay it. When the Board reversed the referee in Hoke I in December, 1983, employer stopped paying. Claimant then requested another hearing; the referee ruled in Hoke III that employer could not lawfully stop paying. Employer appealed to the Board, which reversed the referee. Claimant then sought this review. The issue before us is whether employer could discontinue permanent total disability payments after the Board, on December 18, 1983, reversed the referee in Hoke I and reinstated employer's denials.

Claimant asserts that the determination order of September, 1983, was based on the referee's order in Hoke II and, because that order was not appealed, employer had no right to stop permanent total disability payments. The referee in Hoke III agreed with claimant. He reasoned that, because the determination order in Hoke III ordered temporary total disability payments through July 18, 1983, "per opinion and order of March 28, 1983" (Hoke I) and permanent total disability thereafter, the Evaluation Division must have found that a worsening took place after the employer's denials which had been contested in Hoke I. The referee in Hoke III, therefore, decided that the determination order must have been based on the Hoke II proceeding. As a result, he ruled that employer could not terminate permanent total disability payments on the basis of the Board's reversal of the referee in Hoke I.

The Board correctly reversed the referee in Hoke III.

---

[2] After the referee's decision in Hoke II, claimant asked the Board in reviewing of Hoke I to add Raaf's report to the record in Hoke I. Employer successfully resisted the inclusion.

The referee in Hoke II had refused to consider whether or not Raaf's report constituted an aggravation claim. He ruled he was without authority to do so. Neither party appealed that determination. Thus the *only* claims upon which the determination order could be based were the claims involved in Hoke I. When the Board reinstated employer's denials in Hoke I, employer was not obligated to continue permanent total disability payments, because there was no compensable claim to support the payments.

Affirmed.